# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

LEROY JUAN FRESQUEZ,

       Petitioner,

v.                                            CIV No. 00-1409 JP/LFG

ERASMO BRAVO, Warden,

       Respondent.

## MEMORANDUM OPINION AND ORDER
## SETTING EVIDENTIARY HEARING

THIS MATTER is before the Court on Petitioner Leroy Juan Fresquez' ("Fresquez") petition for writ of habeas corpus and request for evidentiary hearing. On October 10, 2000, Fresquez filed his petition under 28 U.S.C. § 2254. [Doc. 1]. Respondent filed his Answer on December 19, 2001 [doc. 12], and requested dismissal of the petition. On December 21, 2000, Fresquez filed a "Traverse to Defendant's Answer." [Doc. 13.] Fresquez currently is confined at the Guadalupe County Correctional Facility in Santa Rosa, New Mexico.

On February 9, 2001, the Court appointed counsel to represent Fresquez in this proceeding and ordered the parties to brief the issues raised in Fresquez' petition, as well as to notify the Court whether an evidentiary hearing was requested as to any of those issues. [Doc. 14.] On March 14, 2002, Fresquez filed his opening brief. [Doc. 22]. On March 11, 2002, Respondent filed a brief in opposition, and on March 25, 2002, Fresquez filed his reply. [Docs. 27, 28.]

1

**Background**

On March 3, 1993, a Rio Arriba County jury found Fresquez guilty of second-degree murder, aggravated battery with a deadly weapon, and felon in possession of a firearm. [Doc. 27, Ex. A.] On July 22, 1993, the State Court entered a Judgment, Sentence, and Commitment and sentenced Fresquez to a total of 17 ½ years of imprisonment, five of which were for the aggravated battery conviction. [Id.]

Fresquez' federal habeas petition alleges that his Fifth, Sixth, Eighth and Fourteenth Amendment rights were violated "as he was deprived of effective assistance of counsel, witnesses, by compulsory process, in his favor, and subjected to prosecutorial misconduct." [Doc. 1, p. 3.] In addition, his petition asserts that he is incorporating all issues raised to the First Judicial District Court and the New Mexico Supreme Court, in the pleadings attached to his federal petition, which include a state court habeas petition, an amended state court habeas petition, affidavits by Rosemary Vega, Jeanette Vigil, Cindy Duran, Maria Ruth Duran, and some of the appellate briefs.

Fresquez' briefs in support of his federal petition state that he is challenging the state court judgment and sentence entered by the First Judicial District Court in State v. Fresquez, RA 92-179, as to his conviction for aggravated battery with a deadly weapon. He requests that the Court grant his petition and issue a writ of habeas corpus, or, alternatively that the Court hold an evidentiary hearing, so that he can introduce new evidence establishing his actual innocence of the aggravated battery conviction. He further contends that he can present new evidence demonstrating that his Sixth Amendment right to effective representation was violated by trial counsel, Lorenzo Atencio ("Atencio"). [Doc. 22, Doc. 28.]

In his Answer, Respondent denied all allegations contained in Fresquez' petition but conceded that all claims were exhausted in state court. In addition, Respondent did not claim that any of Fresquez' claims were procedurally defaulted. [Doc. 12, ¶¶ 2, 3.]

The Court has carefully reviewed the submissions of the parties and the entire record proper, including 40 cassette tapes of the state court jury trial and 6 tapes of pre-trial and post-trial proceedings. The Court recommends granting Fresquez' request for an evidentiary hearing specific to the new evidence he may have to present regarding the aggravated battery conviction and his claim of ineffective assistance of trial counsel, also related to the aggravated battery conviction.

## **Brief Factual Summary**

Fresquez' conviction arises out of a fatal shooting that occurred on March 11, 1992, at Cindy Duran's ("Cindy") fourteenth birthday party at the Duran home in Chimayo, New Mexico. At the party, several of the adults were drinking beer and/or tequila heavily, including Fresquez and Maria Ruth Duran ("Mrs. Duran"), Cindy's mother. Another girl was present at the party with Cindy – Jeanette ("Jeanette") Vigil, who was eleven then. Neither girl was drinking. Fresquez' brother, Jamie Fresquez, also was at the party, as were the Cordova brothers, Humberto and Hugo. All three had been drinking.

The party lasted from about 6:30 p.m. until between 10 and 11 p.m. when the shooting occurred. During the course of the evening, some of the adults and children left and returned to the party. At trial, Cindy testified that she left about five times and was standing outside the house at times. Fresquez left at some point but returned to the party with a 38 caliber handgun.

When Fresquez returned with the gun, he showed it to people at the party. At some point during the party, Fresquez was seen loading bullets into the gun and then firing four shots inside the

room into the ceiling. The shots lodged in the beams. After Fresquez fired the fourth shot, there is some dispute in the trial testimony as to whether each or both of the Cordova brothers stood and moved towards Fresquez or whether Fresquez turned to Humberto Cordova ("Humberto"), who was seated on a bed, and fired a shot into his head. Most of the trial testimony was that Fresquez shot Humberto while Humberto was seated on the bed. Humberto either fell to the bed or the floor and was carried to his brother's Blazer by Hugo and several others. Fresquez was seen leaving the house after firing the shots and was not seen again that night. Fresquez turned himself into the police the next day. Humberto later died.

The State alleged that Jeanette was sitting on the bed behind Humberto when Fresquez shot Humberto and that a part of the bullet striking Humberto exited his head and nicked Jeanette in the upper right chest/shoulder area. This possible injury to Jeanette from the shot fired at Humberto was the basis for Fresquez' conviction of aggravated battery.

Jeanette, the alleged victim of the aggravated battery, was not available at trial, although the extent of any efforts to find her by either party is unclear. No written statements from Jeanette were admitted, nor does it appear that any were given by Jeanette. There was some testimony at trial, either by Cindy or the investigating officer, as to out-of-court statements made by Jeanette regarding the shooting and/or the possible injury to her. Pictures of Jeanette's shoulder showing a scab, taken several days after the shooting, were admitted.

### Procedural History

After his conviction, Fresquez retained Gary Mitchell as appellate counsel and filed an appeal. [Ex. B to Answer.] In the appeal, Fresquez argued that the court erred by not giving an involuntary manslaughter instruction to the jury, in failing to direct a verdict of not guilty as to the aggravated

4

battery charge, and in denying Fresquez the right to call an expert psychologist on the issue of lack of specific intent and intoxication. Fresquez also argued on appeal that he was denied his right to appellate due process because several bench conferences during trial were inaudible. On May 4, 1993, the New Mexico Court of Appeals proposed to affirm the convictions. [Ex. C to Answer.] With respect to the aggravated battery argument, the Court of Appeals commented that Fresquez' possible attempt to raise a confrontation clause challenge may not have been adequately preserved at trial and that Fresquez had not detailed what evidence the State presented on this matter. The Court of Appeals also asked Fresquez to explain why the hearsay statements by Jeanette Vigil were not admissible as excited utterances. On December 20, 1993, Fresquez filed his opposition to this calendar notice. [Ex. D to Answer.] Counsel stated he was uncertain whether trial counsel clearly argued the right of confrontation during trial and described the hearsay evidence that was admitted.

On January 5, 1994, the Court of Appeals issued its second calendar notice proposing summary affirmance of the convictions. [Ex. E to Answer.] The Court explained at length why it concluded an involuntary manslaughter instruction was not proper under the circumstances. The Court stated that counsel had not provided sufficient details regarding the excited utterance statements that were admitted. Fresquez did not file any opposition to the second calendar notice, and the Court affirmed Fresquez' convictions in a Memorandum Opinion, dated January 27, 1994.

On February 14, 1994, Fresquez, through appellate counsel Mitchell, filed a petition for writ of certiorari to the New Mexico Supreme Court. [Ex. G to Answer.] The New Mexico Supreme Court granted the petition as to the aggravated battery conviction based on hearsay testimony and requested briefing. [Ex. H to Answer.] Fresquez argued that he was convicted of aggravated battery based on hearsay and speculation, and that he was not allowed to face his accuser Jeanette Vigil.

5

Counsel argued that no evidence was introduced at trial showing that the mark on Jeanette was caused by a bullet and he also noted that the prosecutor, at times, suggested the desired answers to witness Cindy Duran. [Ex. I to Answer.]

The State reiterated in its response brief the evidence that supported the aggravated battery conviction. With respect to the Confrontation Clause argument, the State asserted that the hearsay statements did not violate Fresquez' right to confront witnesses against him because Jeanette was unavailable and the hearsay was clothed with sufficient indicia of reliability.

On August 26, 1994, after consideration of the parties' briefs, the New Mexico Supreme Court quashed the writ of certiorari. [Ex. L to Answer.]

In April 1997, Fresquez (through counsel Mitchell) filed his first state court habeas petition. [Ex. M to Answer; April 21, 1997 letter to Fresquez from Mitchell, attached to Doc. 1.] Counsel argued that new evidence had been discovered in the form of affidavit statements from Jeanette Vigil (dated November 4, 1994), her mother Rosemary Vega (dated November 4, 1994), and Cindy Duran (dated July 16, 1996). [Affidavits attached to Doc. 1.] Jeanette's statement does not indicate whether she believed that she was or was not hit by the bullet fired at Humberto Cordova on March 11, 1992. She stated that after her mom had returned from starting towards the hospital that Jeannette noticed she (Jeanette) "had a scratch with a little bit of blood on her left upper shoulder. It felt like if an ant had bit me."

Cindy stated in her affidavit that she actually had been inside at the time of the shooting and had seen the shooting but had been afraid to testify truthfully at trial. She also stated that she knew the scratch Jeanette had was there prior to the shooting and that Jeanette admitted to Cindy that it was there previously.

6

Mrs. Vega stated that when she returned to the house after initially starting towards the hospital with the Cordova brothers on March 11, Jeanette told her she had a scratch on her shoulder and that "it felt like a stingy feeling. Then we went home." Ms. Vega did not say whether she believed the scratch was caused by the shooting.

For reasons that are unclear, no action was taken by the state court on Fresquez' habeas petition for several years. On March 12, 1998, Mitchell filed a request for evidentiary hearing on the petition. [Attached as exhibit to Doc. 1.] On April 12, 1999, Fresquez, acting *pro se,* filed a motion for order to compel response to the state habeas petition. [Ex. N to Answer.] On May 24, 1999, Fresquez, again acting *pro se,* filed an amended state habeas petition, seeking to add a claim of ineffective assistance of trial counsel, for failure to investigate and interview witnesses and his general failure to present a defense at trial, and a claim of ineffective assistance of appellate counsel. [Ex. O to Answer, p. 15, 18-19.]

On July 12, 1999, Fresquez filed a Motion for Writ of Mandamus or Alternatively a Default Judgment or Appropriate Writ with respect to his state habeas petition. [Ex. P to Answer.] Fresquez argued that after repeated requests for hearings and/or movement of the case, no response was made to the best of his belief. (*See* Sept. 19, 1999 letter from Mitchell to Fresquez, attached to Doc. 1.] On July 26, 1999, the New Mexico Supreme Court denied his motion for writ. [Ex. Q to Answer.]

On September 25, 2000, the First Judicial District Court denied Fresquez' state habeas petition "after a review of the pleadings." [Ex. R to Answer.] It is unknown from the record whether any response was filed by the State to Fresquez' state habeas pleadings or what caused the over three year delay in deciding the petition. On September 27, 2000, Fresquez filed a petition for writ of certiorari, which was denied on October 18, 2000. [Ex. T to Answer.] In his October 18 petition

for writ, Fresquez appears to argue for the first time a theory of self defense as to the murder conviction. His theory at trial had been accidental shooting and/or other cause of death. Self defense was never argued at trial.

### **Evidentiary Hearing**

To be entitled to a hearing on the claim of ineffective assistance of counsel, the petitioner must have alleged facts which, if proven, would establish he received ineffective assistance of counsel. Lasiter v. Thomas, 89 F.3d 699, 703 (10th Cir.), *cert. denied*, 519 U.S. 998, 117 S.Ct. 493 (1996). The district court is required to hold an evidentiary hearing in a habeas case only when "the evidence sought to be introduced . . . [is] material to the issue in question and. . . [was] inadequately developed in state court for reasons not attributable to [Fresquez'] inexcusable neglect." Dever v. Kansas State Penitentiary, 36 F.3d 1531, 1536 (10th Cir. 1994).

28 U.S.C. § 2254(e)(2) governs, to some extent, the requirements that must be satisfied for an evidentiary hearing in a habeas matter. That statute provides that an evidentiary hearing can only be held under certain circumstances if the applicant has failed to develop the factual basis of the claim in State court proceedings. Here, the fact that Fresquez did attempt to develop the factual basis of his claims in state court frees him from the requirements set out in § 2254(e)(2). Rojem v. Gibson, 245 F.3d 1130, 1138 (10th Cir. 2001). It appears undisputed that Fresquez raised ineffective assistance of counsel claims in his amended state habeas petition and that he consistently raised arguments concerning the aggravated battery conviction in the underlying state proceedings. Fresquez also requested a hearing on his state habeas petition that was not granted. Therefore, the reasons his claim were not explored at the state court level cannot be attributed to Fresquez' inexcusable neglect.

In addition, the new evidence presented by Fresquez raises questions that are material to his claim of ineffective assistance of trial counsel, both with respect to an alleged failure to conduct a reasonable investigation and trial counsel's performance at trial. The Court concludes that Fresquez has alleged facts sufficient, if proven, to establish ineffective assistance of trial counsel. However, without the benefit of an evidentiary hearing on these matters, the Court is unable to determine, without the "seduction of hindsight review" which Strickland forbids, whether counsel's performance was deficient and prejudicial. Strickland v. Washington, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065 (1984).

At the evidentiary hearing, the Court directs counsel to be prepared to address the following matters: (1) efforts to locate Jeanette Vigil after the incident and prior to trial; (2) defense counsel's efforts to interview Jeanette and to investigate the possibility that the scab on Jeanette's shoulder resulted from some other unrelated incident, and counsel's general investigation into the aggravated battery charge; (3) defense counsel's untimely notice of expert witness with respect to aggravated battery, a specific intent crime; (4) defense counsel's failure to cross examine Cindy Duran at trial regarding Jeanette and the alleged injury to Jeanette; (5) defense counsel's failure to cross examine Agent Sides regarding Jeanette or Sides' interviews with Jeanette; (6) support for the admission of Jeanette's out-of-court statements; (7) more recent affidavit testimony from Cindy, Jeanette, and Jeanette's mother regarding Jeanette's alleged injury; (8) efforts to raise confrontation clause issues at trial; (9) the statements Cindy attributed to Jeanette regarding Jeanette's injury; (10) "new" evidence of actual innocence in relation to the aggravated battery charge; and (11) alleged ineffective assistance of trial counsel regarding the aggravated battery conviction.

At the evidentiary hearing, the Court will not entertain argument or evidence on Fresquez' position that there is evidence of actual innocence in relation to the second degree murder conviction or his claim of ineffective assistance of appellate counsel. The evidentiary hearing will be limited to issues regarding the aggravated battery conviction.

### **Conclusion**

The Court sets an evidentiary hearing on *August 22, 2002 at 9:00 a.m.* concerning Fresquez' claims of Confrontation Clause violations and ineffective assistance of trial counsel, as they relate to the aggravated battery conviction. Counsel for Fresquez is responsible for submitting the proper paperwork for Fresquez' transportation from the correctional facility to the hearing.

*[signature]*
Lorenzo F. Garcia
United States Magistrate Judge

**A copy of the foregoing was mailed or electronically noticed to counsel of record and pro se parties on the date of its filing.**